Our final case this morning is number 18-1690 iRobot Corporation v. ITC. Are you familiar with our decision in Zhang v. Boston Scientific? The reason I ask is, for the life of me, I can't understand the claim construction issue here because I can't understand what the accused product is. And in order to arrive at a proper claim construction, there really needs to be some context. What happened in Zhang is that we had a situation like that where you couldn't tell what the underlying infringement is, so you couldn't really understand how to construe the claims. And one of the grounds for refusing to entertain the case and sending it back was that without that context, the issue was just abstract. So that seems to be somewhat the problem here because I have a very difficult time figuring out what the meaning of this claim construction is and how it applies to the accused product. So what's the response to that? The response to that, I think, is to look at the relevant paragraphs of the summary determination that followed the claim construction because the case is here. Yes, and I did that. But what I found was a reference to the statement of undisputed facts where, from all I could tell from looking at the ALJ's opinion, one would find the context within which this case is ultimately to be decided. But, of course, in our appendix, we don't have the statement of undisputed facts. I went to the – at least I didn't find it, and I looked. And I went to the website to see if I could pull up the statement of undisputed facts, and it wasn't there, or at least it wasn't available. So could you provide us with the statement of undisputed facts? And would the statement of undisputed facts tell us what the accused product is and how it operates? So, yes, we can provide that to the court. Well, would it help us with Judge Dyke's question? Because I had exactly the same question. Now, I'm not sure that it would because I think that the statement of undisputed facts, for purposes of this motion, just by these parties on this issue following the claim construction, I think that produced the 10 findings by the ALJ in the summary determination. But those findings don't tell us very much about what the accused product – how it operates, do they? No, I think that that's fair. What they do tell you is what the dispute turned on, that the reason that the other side was pushing for the construction that the ALJ adopted was that the accused products don't transmit configuration information. They don't transmit a software program or machine-executable code. What do they transmit? I expect that they – I think our position is that they transmit scheduling information. I understand. That's the problem here. I mean, it's just – you're just repeating the language that the parties have been disputing without really telling us what's going on. Why shouldn't we send this back and say, we're not going to decide this case in the abstract here. We need to know what's going on, and you better tell us what's going on if you want us to rule on the claim construction. Well, if the court can't rule on the claim construction, we certainly would prefer that it do that rather than affirm. I do think that it would be important to tell the court that it's the claim construction, not just the summary determination, that's being set aside for inadequate explanation. I don't think we would have an objection to that. We think that there are certain errors that are discernible on the face of the court's – of the ALJ's decision. And if the court doesn't feel prepared to rule based on the record before it, I don't think we have an objection to sending it back. Is there anything in the record that was before the ALJ that would tell us were we to get a hold of that record of the information that we would need to know exactly how the accused product works? So there's been an entire proceeding before the commission. This is just one patent in a multi-patent investigation. And so there is a much larger record about the accused products, the other patents, our infringement contentions, invalidity, and so forth. Because when you say, well, it sends scheduling information, and that doesn't help me, because I want to know exactly what this information consists of. Is it code, computer-readable code? Is it a beep that's sent with, for example, a radio frequency signal? I think I would describe it as data, but not code. Data is so general a term that that's like saying it's a signal. But to describe it as code, if it were code, then we wouldn't be here, because the other side wouldn't have proposed that construction, and we would be arguing that they infringe under it. Because the construction that was adopted includes machine-executable code. And so it's not that, but I think the way I would explain it is that when you have a properly configured robot, the robot has on it all of the code necessary to perform the cleaning operation. When it's told what time to do that, and what room to do it in, or how much of the room to clean, and so on. So the information that's transmitted in order to give the robot the final instructions is what time to clean and how much of the room to clean. There could be other settings as well. That may not be machine-executable code, but it certainly is an instruction, and it causes the processor of the robot to execute the cleaning operation. Now, we would have to prove, in proving infringement as a fact question, we'd have to prove that the instructions transmitted to the robot and the accused products do in fact cause the processor to perform the cleaning operation. That would be a burden we'd be happy to shoulder. But the reason that they don't infringe, and the reason we didn't oppose their summary determination, is that the accused products don't infringe if you narrowly read the word instructions to include. Why is this even patentable? Why is the method claimed? Why is it even eligible for a patent? So, of course you'll understand if I say that's not before the court. Maybe. I think it could not be before the court on a decision from the ITC. Is there a defense of invalidity that's asserted before the ITC? Throughout the investigation, there are a number of invalidity arguments. As to this patent. As to this patent. I'm not sure of the answer to that because this is after Markman, the proceedings as to this patent ended with this summary determination. But you said eligibility is not appropriate in the ITC? No, no, no. I'm saying on this appeal from the agency on a summary determination of non-infringement. But it could have been. Oh, yes. I'm not disputing that. Or in the related district court litigation, sure. And it's a matter of law. It is a matter of law that has not been decided in this case. Let me answer the question. Here you have a method that refers to an actual tangible product. It refers to both the robot and a particular mobile phone. And it gives you the method of uniting in one device the means of either configuring the robot or transmitting scheduling information. So your theory is that the transmission of an instruction clean now is an infringement? The transmission of an instruction clean now. So it has to be in response to a user input at the mobile phone. Yeah, but a mobile phone transmitting instruction clean now is an infringement. Yes, it could be. Okay, so that's the problem then in terms of validity is that with a claim construction that broad. So I think it would help if we went back to the wording of the claims because a couple of things. So the independent claims here, claim 1, claim 12, slightly different wording. But what we're talking about is instructions that cause the processor to carry out a cleaning operation. Not just any cleaning operation, but a cleaning operation that reflects the schedule that's implemented through the mobile device by the user. Robotic cleaning devices were well known at the time of this priority date for this patent, right? Yes, that's right. They were cleaning robots at the time. The innovation in this case is the ability to use a single handheld device to control. To tell it to start cleaning? No, but not just that. To pre-program and to also update the robot's programming or potentially to control the robot. But this claim doesn't require pre-programming. That's your whole argument. That's right. But all this claim requires is that you signal to the robot something that compels the robot to clean according to a schedule. To the schedule that the user enters. That the user selected. Now if there's a schedule, let's suppose the default schedule in the robot is clean every 12 hours.  And what I have is, let's say, a fob, like my key fob for my car, which when I punch that, it tells the robot to go ahead and start the 12-hour cycle cleaning now. That infringes according to your theory, as I understand it. It would not, Your Honor, because it's not, first of all, it's not a mobile phone. No, I put it, okay, I put the clicker onto my mobile phone. So if you send a message saying start the 12-hour. It's just a click. It's just a click on the mobile phone. Yeah, that could infringe if it causes the processor to. Could or would? As I understand Judge Bryson's question, I think that it probably would. Yeah. I'm not seeing a reason why it wouldn't accept the mobile phone point that I made. But so if I could, I'd like to sort of get back to where the ALJ, how the ALJ construed these claims, because the ALJ found some redundancy. And this kind of goes to the point that Judge Bryson's question is getting at. The ALJ found sort of redundancy between the, and said why would there be instructions about the schedule in what the input? And then why would the instructions to the robot then again include the scheduling information? The ALJ just simply misread the claims. I think that you can see that most clearly. So you misread claim one. If I could, I'd like to take the court to the second paragraph of the claim. In response to an operator command input at the mobile phone, and at least in part indicative of the schedule. So that's two adjectival phrases, at the mobile phone, and at least in part indicative of the schedule. And the ALJ read it so that the first part modifies the word comes before, and the second part modifies the word that comes after instructions. We think that's wrong, and that the correct reading of it is that both of those adjectives modify what comes before user command input. And so because the user command has put in information that tells you what schedule to follow, then what makes the claim work? What makes the robot clean according to that schedule? Because the claims then say three times, thus schedule, thus schedule, thus schedule. Not just any schedule, but the schedule input by the user. What makes the robot clean according to that schedule has to be the transmission of information that tells it to clean according to that schedule. The ALJ's construction, my friends on the other side are advancing a construction that says that's totally optional. What's required is that you send what we call configuration information. Information that configures the robot. It reprograms the robot. Updates the software, puts new software on it, which is not necessary. And I think that's most clearly shown not to be necessary by Figure 7, which has the block drawing which says configuration information not necessary if the robot is already configured. What makes the robot clean according to the schedule is the transmission of scheduling information. I'm unclear what exactly the claim construction that was adopted by the ALJ means with respect to the reference not to software program, which I understand. What is the minimum required in your view by the term machine executable code? Because I found that in this context to be a somewhat ambiguous term. What's the minimum required to meet it? Yeah. And I certainly understand why the court would think that more factual context would be helpful in assessing that information. Because I think when I read it, at least, just to give you an idea of where I'm coming from here, when I read that, I'm not seeing the same thing as downloading an application or downloading a program. I'm seeing something much more minimal. And so what do you think is intended by software machine executable code? We take it to mean lines of programming. Source code. I think it would not necessarily have to be source code. It doesn't necessarily have to be in machine language. So a program in C might qualify. But here's the distinction I might draw. So if you have a spreadsheet, machine executable code tells the computer how to load a spreadsheet and how to perform functions that are based on the data put into the spreadsheet. What would not be machine executable code is the users entering data into the individual cells of the configured spreadsheet. But would machine executable code be equivalent to, at the minimum, a signal from the phone to the processor that the processor could understand and act upon? No, I don't think so. And what's the difference between that and what your concept of machine executable code is? Because that's where I'm having trouble. And I think that's exactly the right place to focus it. Because all we want in our construction is to allow an instruction with some scheduling information in it that goes to the processor and can be understood by the processor and can cause the processor to carry out the cleaning operation. That's what we want this claim to be read as. So the machine executable code limitation read in by the ALJ, not based on anything at all in the intrinsic record, not even based on the dictionary that was cited in the briefing below. So to be clear, the dictionary itself does not use this machine executable code language in the dictionary definition. Anything that triggers the cleaning program that's in the robot would qualify. If it has a scheduling component either in the message or that is interpreted, where the message is interpreted by the robot as scheduling? Well, specifically by the processor in the robot. Well, OK. That's right. And I think that the processor is there performing that function, making clear that this is the tangible machine on which this instruction is operating. But yes, an instruction that can be understood by the processor and that causes the processor to carry out the cleaning operation. And so machine executable code is more complex than simply an instruction that's understandable by the processor. How? I think because if the processor is already configured and is waiting only for a datum that says what time to start, as opposed to a series of instructions that tell it what to do when it's told to begin cleaning. That's the difference that we see. That if all that's transmitted is, for example, day, date, and time, to use the phrase from the specification, that would be scheduling information. We think that that is covered by the claims. It's exactly the kind of thing that the user would be inputting into the mobile phone in order to have the robot at some time in the future. But you say it wouldn't be machine executable code, even if it was transmitted in a language that was specifically directed to the processor's understanding and implementation. Yes, I think that that's right. That's our understanding of why under the ALJ's construction, we did not oppose the summary determination of non-infringement. Whereas if you took that artificial limitation out of the claim construction, and you really just went back to the language of the claim and said instructions that could be understood by the processor, and it caused the processor to carry out this operation, we would not have conceded non-infringement. We would have a good infringement case, and we would be proving the causation through the processor as a factual matter. But that's an obligation that we would embrace. OK. All right, we're out of time. We'll give you two minutes for rebuttal. Thank you. Mr. Trout, is that how you pronounce it? I pronounce it Trout, but I think the correct pronunciation is Trout. Trout, OK. May it please the court. When you look at what the claims actually say, the only reasonable objective conclusion is that instructions, in connection with a processor, has its ordinary meaning in the field. The claim language does not support the connection that iRobot wishes was in the claims. Claim construction is an objective analysis. Is there an invalidity issue in this case? I know it's not before us. It's not before us, but certainly it does seem abstract. That could be an alternative basis for affirming the commission, but I'm not prepared to address 101 law. Well, but I'm not asking you to address it. I'm saying, is there an issue before the commission if the infringement hurdle is overcome as to invalidity? I don't recall what issue, what invalidity. You don't know whether there's an invalidity issue. OK. I just don't recall what was raised. The intervener might be in a better position. OK. So claim construction is an objective analysis, and iRobot's word choice matters here. The commission's construction is based on objective evidence. First and most importantly, it is based on iRobot's choice of using instructions, a term meaningfully used only in the claims. Second, it is confirmed by how instructions is used in the context of the surrounding claim language, and is also confirmed by the specification. The disputed phrase here is information comprising instructions configured to cause a processor of the cleaning robot to perform a cleaning operation. We're here to consider constructions, which is just one part of the claimed information. First, and I think most importantly to this case, the commission's construction is supported by iRobot's choice of the word instructions. When you draft claims, you can choose to use a term that is defined by the specification, or you can use a term that's defined elsewhere. Here, the patentee did not use instructions in the relative context in the specification. Therefore, it must have relied on a name from elsewhere. Well, suppose, to go back to Judge Dyke's question, suppose the whole system was programmed so that if you punch into your phone, clean now, the machine interprets that sensibly enough to mean start cleaning. And that's the schedule on which it is to operate. And it goes ahead and cleans. Would that infringe? I don't think. Why isn't that an instruction to clean according to a schedule, i.e. now? Well, that wouldn't be according to a schedule, because the specification makes that decision. Okay, clean every 12 hours. I punch it into my machine. That's a signal, and it's just, in whatever language is comprehensible by the processor. Is that an instruction within the meaning of this claim? Not within the meaning of this claim. Why? Because if you look at what the claims actually say, the claims do not—they're not met if you just transfer a schedule. And I think the example you gave is a schedule. Well, it's not just a schedule. It's a direction to start cleaning according to this schedule. I've given you both a schedule and an instruction to get going. Well, I think if— Or clean in 30 minutes. The claims say instructions configured to cause a processor to clean according to a schedule. Isn't that just what I've done? Well, what you've done is you've reduced all those words to simply the schedule. Well, no, it's an instruction. Clean in 30 minutes. It has clean, an instruction to act, and 30 minutes, which is a schedule. Why isn't that enough? I think it's not enough because it renders a lot of the claim language superfluous. And this court has said that when you render a lot of claim language superfluous, that's not the correct instruction. And also, I think it's important that instructions here is used in a technical sense. I think you're describing a lay sense. Yeah. It's just not clear to me that there's anything in the specification that tells us that instructions has a special meaning. Well, I think that claim construction begins with the claims. And in the context of the claims, I think that it does show that it's a technical meaning. I think that the claim uses instructions first in connection with the processor. And it uses the language to execute a cleaning operation. And these instructions are transmitted over a wireless communication link. I believe in context, this is a technical term. It's a technical term that's not otherwise used in the specification. So I think you have to look outside the specification to get guidance for the ordinary meaning. And that's what the AOJ did. The AOJ said that it's extremely unlikely that iRobot's construction is correct because iRobot offered for the construction of a term that's used over 50 times in the specification. And instructions is not used there. So the AOJ cited Thorner, CCS Fitness, and Epistar. And in those cases, it teaches that to deviate from the ordinary meaning, a party must show a clear disavowal of that meaning. So the phone would need to download a program to the processor in order to infringe this claim? Yes. Which is something the specification contemplates could occur, right? Absolutely. The specification also teaches that the robot can clean according to previously scheduled or previously provided scheduling information. And you can see that in the appendix, even in the abstract. The abstract, this is APPX193. It declares a method of scheduling a robotic device to run autonomously based on previously loaded scheduling information. The specification says almost the same thing at APPX215, that's column 5, lines 52 through 54. And notably, the claims are not limited to a cleaning robot that does not have a previously loaded schedule. So I think that implies that the claims are open to the robot running on a previously loaded schedule. How many other proceedings before the ITC about other patents, do they involve this same issue? No, our appeals are on a patent by patent basis. So this is the only issue before the ITC. These other patents don't involve the same issue? I'm almost positive they don't. But there are other patents that the patentee has expressly determined to use scheduling information. We cited one of those in our brief, and there's another pending application that uses that same language. So in your view, if this claim read exactly the same way as it does, but the word direction were substituted for the word instruction, then there would be an entirely different construction of the claim? So information including directions? I think yes. I think that if it said directions, then you'd have to rethink. It would just be different claims. Yeah, it would be different. But the question is, would it be materially and importantly different? But what I'm trying to get at is, you seem to be pinning an awful lot of your case on the notion that the word instructions has to be used as a term of art, and that it completely changes the meaning from what I would assume you would agree that it would have if the word directions were there. But if I'm wrong in that assumption, then tell me. Well, I think the claim language is, I think, the most important part in issuing claims. But it's not just based on that. It's based on how instructions is used in context. If the patentee wanted it to say the schedule, it could have simply said the schedule. It didn't. Or it could have simply said scheduling information. Their context, it reads out the processor to read it how they want to read it. All right. I think we're out of time. Let's hear from Mr. Brown. May it please the court. I'll start by answering some of the questions that have been asked that I'm not sure you got answers to. So, yes, there is an invalidity defense. We never got to it because of the way this unfolded. Obviousness. Yes, we have an obviousness defense. But that was not 101? I believe. That I don't recall for certain. I believe that's in there. But we'd have to go back and look at the pleadings. The closest we can come to giving you a description of how the products work, I believe, is in the complaint that was filed by the plaintiff. And they have a detailed claim charge attached to the complaint. If you want us to submit that, I think that's the best document for us to submit. Before you leave the others, if you had invalidity defenses and possibly 101, why wasn't it addressed? Procedurally, what happened is the ALJ first did a claim construction hearing. Based on that claim construction hearing, iRobot agreed they couldn't prove infringement. And so we never reached any of the other issues. We didn't do depositions. There was no experts. All there was was the pleadings. I'm virtually certain that we pled 101, but I don't have it in front of me as a defense. I don't want to make that representation. But I think it's likely. And we could submit the pleadings to you, and then you would know. Is there a way online to get that material? Yes. You can go through. It's called EDIS. You need a login, an EDIS login. EDIS? How's that spelled? E-D-I-S. Okay. I don't actually remember the rest of the URL, but if you search EDIS, it's the public portal for accessing the ITC. Okay. And I think a good place maybe for me to start is with your question, Judge Bryson, about if it would make a big difference if it said directions instead of instructions. And I think it would not make a big difference. And the reason I think it wouldn't make a big difference is because we're not, at least from my perspective, the construction is not correct simply because of the word instructions. It's correct because of that entire phrase, the context that that takes place in the overall patent, and also because of Claim 13, which uses the term scheduling information. I think the critical thing to understand about this patent is when you read through it, there is a consistent and repeated distinction between configuration information and scheduling information. What does your product do? Why is it alleged to? There's an application on a mobile phone. Yeah. The user can put in a schedule, and then that schedule will be transmitted to the robot. So like claim 12 o'clock today. Correct. 12 o'clock tomorrow. Every Tuesday at 9. I don't know about every 12 hours, but along those lines, any one of those. Okay. And that is not code, you say. Correct. Even though it's a transmission of a signal in terms that the processor can understand. Correct. It's more like an API, right? It's more like the values in the spreadsheet, as Council was pointing out. It's data that is transmitted in a format that can then be understood by the code running on the computer. I see. And so the key point, I think, is when you read this specification, there's a clear distinction between configuring and scheduling. And configuring is repeatedly described as the program on the computer or updating the program on the computer. And scheduling is 9 a.m. on Tuesdays, something along those lines. And so when you read these claims in that context, in the context of the specification, with this clear distinction between configuring and scheduling, and you see information including instructions configured to cause a processor of the robot to execute, that, in this context, is talking about the computer code that's consistent with the word instructions. I think the word configured is probably the most important. The word cause, I think, is very important. Cause a processor of the cleaning robot. We've heard an argument that the schedule causes the processor of the cleaning robot. And I think that might be true in a but-for sense, but it's certainly not true in a proximal sense. The proximal cause of the processor executing the cleaning operations is the code the processor runs that allows it to interpret the scheduling information. So when this claim says, cause a processor of the cleaning robot,  the clear, direct cause of the processor running the cleaning operations is the code that allows the processor to run the cleaning operations. And that conclusion, that this phrase in Claim 1 and in Claim 12 refers to code, is very much bolstered by the fact that in Claim 13 there's an express reference to scheduling information. So if we were to follow iRobot's argument, we would be looking at Claim 12, and we would have two extremely different phrases that mean the same thing. We would have, on the one hand, scheduling information, and on the other hand, information comprising instructions configured to cause a processor of the cleaning robot to perform operations, including executing a cleaning operation, in the room according to the schedule. Those are very different phrases. They don't mean the same thing. And we don't know that just from the word instructions. We know it from instructions, configured, probably most importantly, the word configured, and then the concept of causing a processor. But do the other patents that issue in the ITC proceeding involve the same issue? No. Not at all. Nothing like this. They're very different. I believe the only remaining issue, we're no longer involved in, I believe the only remaining issue is about a side brush on a robot. So the robot has sort of a main brush with a vacuum, and a side brush that sweeps the dirt in front of them. It has nothing to do with this. But I think, so fundamentally, I think the thing that determines the result in this case is the context the specification provides about what configuration information is, what scheduling information is, and how they contrast. So you're reading the word configured to be a reference, in effect, back to configuration as it is used in the specification. So the specification doesn't just use configuration. I want to be clear about that. It uses the word configured repeatedly and consistently to refer to programming the robot or programming the processor, putting code into them. And it uses scheduling in a very different way. And I think I want to agree to some extent with something my robot said. There is a bit of a disconnect in this claim, what seems to be a bit of a disconnect, between the operator command input with the schedule, and then the robot operating according to that schedule, if there's no requirement of that transmission. There's sort of an initial question that you have when you read this claim. But what I think is important is the patent makes clear that you can do two things with this supposed invention. One is transmit configuration information. One is transmit scheduling information. You need to have both of them on the robot for the robot to work. But you don't need to transmit either of them if it's already on the robot. And I think it's a very simple and common circumstance. If your phone downloads an update for the robot, and you look on your phone and you say, continue cleaning with the updated program according to the schedule, that would meet this claim. And what would happen is the updated cleaning program would be transmitted to the robot. I think it's probably fair to do that. But if you aren't updating the program and simply saying, implement the standard program already in there, which has a schedule already built into it, does that infringe? Under my… Under your construction. No, it does not. And that is because you are not configuring… Correct. …the instruction. You are simply sending an instruction using the term instruction in a… In a different sense, in a more English sense. But it's really the word configured that you're focusing on more than the word instruction, it sounds like. I think the whole phrase. I think instruction is important. I think configured is more important than instruction. I think cause a processor is important. Well, cause a processor. I'm not sure I follow you on that. Because if I, again, have a, well, either a key fob or a phone key fob, and I hit it and it said clean, I'm causing the cleaning. Yes. I mean, I'm the principal cause of the cleaning. Everything else is just mechanics. Oh. I mean… The proximal cause of the cleaning there. Let's look at the claim because the claim tells us more, right? It tells us what has to happen. It says, Executing the cleaning operation in the room according to the schedule comprises leaving a stationary charging device at which the cleaning device is docked according to the schedule and navigating about a floor surface of the room. So, I don't think that your button press there is causing this. I mean, maybe in a distant but-for sense, it's causing the navigating about the floor of the room. But what's causing the robot to navigate about the floor of the room is the instructions on the processor that tells it what to do. That was an issue in the other patents, right? There were some detailed claims about the algorithms that it uses in order to navigate effectively about the room. That's the code in the processor. That's not pressing a button. Okay. Thank you, Mr. Brown. Mr. Jay, you've got a couple minutes there. Thank you very much, Your Honor. So, I think Judge Bryson's questioning has brought out that the instructions, the other side presumes that instructions is used in the technical sense. And I think our fundamental submission is, no, it's not. And it's certainly not used in the technical sense that the ALJ distilled with this machine-executing. What do you say about the congruence between the term configured as used in the claim and, as Mr. Brown argued, the way that term is used in specification? I'd like to make two points about that. One is about configuration information, because I do agree, and this is best seen at the bottom of Column 11, the top of Column 12, and the corresponding Figure 7, that configuration information is a different category of stuff than scheduling information. But the figure makes very clear that you don't have to transmit configuration information if it may already be installed. This is Figure 7? This is Figure 7, that's right, and it's discussed at the bottom of Column 11. But I want to make a broader point about the use of the word configuration, because the ordinary meaning of configuration is just to set up for operation in a particular way. And if you look throughout the specification, and there are five examples just in Column 10 of the patent alone. I think the best one is probably at Column 10, Line 32. Configuration is used throughout the specification, and it is just not correct to say that in every place configuration is used, it conveys some kind of electronic or software or technical meaning. Where it's talking about configuring the robot, that's true, because it's talking about configuration information. But there are lots of things ranging from a user input to a digital display that are referred to throughout this patent as configured or configuration or being configured. Configuration is just a relative arrangement of parts or elements. That is how we read this. Why don't we have to construe the claim, why don't we have to reject your claim construction in order to preserve the validity of this patent? Because isn't it pretty clear that this patent would fall on obviousness grounds if your claim construction were adopted? No, I don't think that's correct, Your Honor. Why is that wrong? To answer that question, Your Honor, I think I have to get into a full description of the art and individual references. But you described it earlier that the invention is sending instruction to start cleaning from a mobile phone to a robot. The robots existed before. They had cleaning schedules in them, and the idea is that this patent covers sending an instruction to start the cleaning schedule. That's not quite right, Your Honor. What's wrong with it? Let me just preface my answer by saying that all of this would be premature for the court to get into, number one, on Chenery grounds, and number two, just you don't have the art before you as of the priority date, which I believe is in 2004. But just to give you the basic answer of what I disagree with in your question, is if you read the first couple of columns discussing the background of the invention, it discusses how robots could be programmed with user input on the robot, which is different from the type of advanced programming potentially combined with configuration information that could be done under this invention from a single device. But in any event, as Mr. Brown said, that's something that if you reverse this claim construction, that could be asserted in the ITC. It could be asserted in the parallel district court litigation, which I also wanted to mention. That's been stayed pending the ITC, but that is another place, I suppose. What district? DMASC, to look at for if what you're looking at is something that you can get on the internet before we file the information that Mr. Brown and I both referred to. And you think that information—well, go ahead and complete it. There are allegations in the complaint in that case, I believe, about the way in which—about the ITC's product. And as Mr. Brown said, there's also the complaint in this case, which has a detailed claim chart. Which we have one page of, I think. Right, and if the court would like, we, the parties, can jointly file something to supplement the complaint. Is 101 in the district court? Because of the ITC investigation, Your Honor, the district court proceeding has stayed. I know, but is that in there? I don't think that the other side has answered yet, so that would be the time to assert that, to answer or move under Rule 12. So it would be premature. But all of which to say, all of that could come later. The question, I think, that we want the court to answer is the question that the ITC determined, which is just that nothing can infringe this patent, no way, not possible, unless it has software program or machine-executable code. That limitation is not in the claims. It is not in the specification. You can't get it out of processor for exactly the reason that Mr. Brown, I think, basically conceded. He said that, yes, in a sense, you can cause the processor to do all of those things. I think the words he used were, can be understood by the processor. That's the whole point. And we will happily take on the obligation of proving, as a factual matter, that A causes B, that the instruction causes the processor to execute. And the defect in the ALJ's construction is that it precludes us from doing that, that even if the processor can understand the instruction, it's out because it's not machine-executable code or a software program. Okay, thank you, Mr. Jay. Thank you all. The case is submitted. That concludes our session for this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 2 o'clock a.m.